[No. 13151–6–I.   Division One.   January 11, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT WATSON LINDAMOOD, *Appellant.*

*Kim Wakefield* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Timothy X. Sullivan, Deputy,* for respondent.

SCHOLFIELD, A.C.J.—Robert W. Lindamood appeals a conviction for aggravated first degree murder while armed with a deadly weapon. He asserts the evidence was insufficient to support a finding of premeditation and also assigns error in admitting evidence of his prior burglary conviction.

## FACTS

On December 18, 1982, Lindamood, who was then 18 years of age, discussed with his friend, Dennis, a plan to rob Roy George, a 77–year–old neighbor. Lindamood had heard rumors that George kept several thousand dollars in his house or buried in his yard and testified that he planned to go to George's house, knock him out, take his money, then, with Dennis, buy a car and go to California.

Lindamood went to his mother's house and got a coffee table leg, which he wrapped in a paper sack tied with string. Lindamood then went to George's door, and when George answered his knock, tried to enter, saying that he wanted to discuss something with George. George told him to go away. Lindamood pushed his way into the house and started striking George on the head with the table leg. Lindamood failed to knock him unconscious at first, but after several blows George fell to the floor, where he pleaded with Lindamood not to strike him anymore. Lindamood continued striking George about the head with

the table leg, and afterward struck him about the head or chest with a large piece of stovewood. While George was lying on the floor unconscious, Lindamood went through the house looking for money. After taking some cash and silverware, he left.

George died of the injuries inflicted by Lindamood. Dr. Donald T. Reay, the medical examiner for King County, testifying on the basis of his autopsy of George's body, stated that there were fractures of the base of the skull, nasal and facial bones, the sternum and ribs. There was also a tear of the aorta, which caused extensive bleeding. He described the cause of death as "blunt impact–type injuries sustained to the head and to the chest region." He testified that the table leg was capable of causing the described injuries. He also testified that all of the blows were struck while George was still alive and that many of the blows were struck while George was lying flat on his back on the floor. Dr. Reay concluded that the head injuries alone were serious enough to be the probable cause of death (he counted 19 separate blows to the head), and that the chest injuries alone could also have caused George's death.

Lindamood was charged with one count of premeditated murder, aggravated by the fact that it was committed in the course of first degree burglary and first degree robbery, pursuant to RCW 9A.32.030(1)(a) and (c)[1] and RCW 10.95-.020(9)(a) and (c).[2] Lindamood was tried by a jury.

---

[1] RCW 9A.32.030 provides, in part:

"Murder in the first degree. (1) A person is guilty of murder in the first degree when:

"(a) With a premeditated intent to cause the death of another person, he causes the death of such person or of a third person; or . . .

"(c) He commits or attempts to commit the crime of either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, . . . and; in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . ."

[2] RCW 10.95.020 provides, in part:

"Aggravated first degree murder defined. A person is guilty of aggravated first degree murder if he or she commits first degree murder as defined by RCW

At the beginning of the trial, defense counsel moved to exclude evidence of Lindamood's prior second degree burglary conviction. The trial judge, after reviewing the requirements of *State v. Alexis,* 95 Wn.2d 15, 19, 621 P.2d 1269 (1980), denied the motion. Without waiving her objection, defense counsel brought out on direct examination that Lindamood had recently been convicted of second degree burglary.

Lindamood testified that his friend, Dennis, provided him with a pair of gloves, which he wore during the commission of the crime for the purpose of avoiding leaving fingerprints. He also testified that he made no effort to disguise himself by the use of a mask, even though he had worked for George in the past and knew George could identify him. Lindamood also testified that he was big and strong enough to have tied up George, gagged him, and thus sufficiently disabled him for the purpose of committing the burglary. Lindamood weighed 180 pounds. The evidence showed that Roy George was 5 feet 8 inches in height and weighed 170 pounds. Lindamood denied any intent to kill George and denied any premeditation of a murder.

The State introduced into evidence Lindamood's written confession to Detective Sanford, Seattle Police Department, on December 21, 1982, in which he made this statement: "Just before going to George's house to kill him, I wrapped it [the table leg] in a brown paper bag and tied it with some string."

### PREMEDITATION

Lindamood argues that there was no substantial evidence of premeditation, that the evidence showed nothing more

9A.32.030(1)(a), as now or hereafter amended, and one or more of the following aggravating circumstances exist: . . .

"(9) The murder was committed in the course of, in furtherance of, or in immediate flight from one of the following crimes:

"(a) Robbery in the first or second degree; . . .

"(c) Burglary in the first or second degree;"

than a plan to rob the victim by getting inside his home, rendering him defenseless or unconscious by striking him over the head with a wooden table leg and then taking the victim's money and fleeing to California. The fact that Lindamood killed Roy George was not disputed; the sole contested issue at trial was whether the murder was premeditated.

The test for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Intent and premeditation are separate and distinct elements of the crime of murder in the first degree. *State v. Brooks*, 97 Wn.2d 873, 651 P.2d 217 (1982). The premeditation required to support a conviction of murder in the first degree "must involve more than a moment in point of time." RCW 9A.32.020; *State v. Griffith*, 91 Wn.2d 572, 577, 589 P.2d 799 (1979). Premeditation is a question for the jury. *Griffith*, at 577.

Prior case law in Washington does not offer a comprehensive articulation of the types of evidence that can be used to prove premeditation. Evidence of planning activity before the murder, however, has been widely accepted as probative of premeditation. *State v. Tikka*, 8 Wn. App. 736, 742, 509 P.2d 101 (1973). In *State v. Lanning*, 5 Wn. App. 426, 487 P.2d 785 (1971), the court reasoned that the defendant's availing himself of a knife or other sharp instrument capable of nearly severing the victim's neck provided evidence of premeditation. In *State v. Commodore*, 38 Wn. App. 244, 684 P.2d 1364 (1984), evidence the defendant went to a room where he knew he could find a gun and then returned to shoot the victim was held to be evidence of planning activity that could support a finding of premeditation. These cases and ordinary logic support the view that any planning activity by the defendant prior to the murder, which relates to the manner in which the murder was accomplished, can be evidence of premedi-

tation.

There was sufficient evidence in this case to support a finding of premeditation. Lindamood discussed with a friend a plan to rob the victim. This planning included arming himself with a table leg, a weapon capable of inflicting lethal wounds. The friend provided Lindamood with gloves, which he wore at the time of the offense. The purpose of the gloves was to avoid leaving fingerprints. George was well acquainted with Lindamood, who had worked for him in the past. The victim could have identified Lindamood had he lived. Lindamood also made no effort to mask his face or his voice. These facts could be interpreted by the jury as evidence that Lindamood did not expect George to survive. His written confession to police that he wrapped the table leg in brown paper "[j]ust before going to George's house to kill him" was evidence from which the jury could infer that Lindamood formed the intent to kill well in advance of the crime.

We conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the element of premeditation beyond a reasonable doubt. *State v. Green, supra.*

## ADMISSION OF PRIOR CONVICTION

The trial court admitted evidence of a recent conviction of second degree burglary. Lindamood contends that this was prejudicial error because (1) the prior crime was similar to the crime charged, and (2) the only contested issue in the case was premeditation and he was the only witness who could testify to his state of mind at the time of the murder.[3] Lindamood also complains that the trial judge did not state on the record the factors he found to support admission of the evidence.

ER 609(a) provides:

---

[3]Lindamood's argument appears to be premised on the recognized concern that admission of a defendant witness' prior convictions may adversely affect the defendant's decision to take the stand. *State v. Jones,* 101 Wn.2d 113, 120, 677 P.2d 131 (1984).

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, . . .

The potential for prejudice is considered to be great where the prior conviction and the crime charged are the same. *State v. Thompson*, 95 Wn.2d 888, 892–93, 632 P.2d 50 (1981). While burglary was charged in the case, it was involved only as an aggravating factor. Furthermore, the burglary issue was not contested. The real issue decided by the jury was the element of premeditation in aggravated first degree murder. We deem it very unlikely that a jury would be influenced to find premeditation in a murder case because the defendant had been convicted of second degree burglary.[4] This is particularly true where the murder was admitted. The trial judge reasonably could conclude that the prior conviction would aid the jury in evaluating credibility and that the probative value outweighed the possible prejudice.

The record reflects that the trial court considered *State v. Alexis, supra,* and *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983) before ruling. We find no prejudicial error from the trial judge's failure to state on the record his view of the impact of the six factors listed in *Alexis.* This case was tried in March 1983. *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984), requiring the trial court to state for the record the factors which favor admission or exclusion of prior conviction evidence, was filed in February 1984. At the time the trial court ruled in this case, it was entitled to rely upon *State v. Thompson, supra,* which spe-

---

[4]We note that the State gave Lindamood the option of identifying only a prior felony conviction, without specifying the actual crime. Lindamood's counsel elected to have him testify on direct, identifying his prior conviction as second degree burglary.

cifically held that it was not necessary that the trial judge state his or her reasons for ruling on ER 609(a) issues. *State v. Rhoads,* 101 Wn.2d 529, 681 P.2d 841 (1984) holds that *State v. Jones, supra,* should not be given retroactive application. Accordingly, Lindamood's assignment of error on this issue is without merit.

Judgment affirmed.

SWANSON and DURHAM, JJ., concur.