[No. 17874-9-III. Division Three. September 16, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL CRAIG PERKINS, *Appellant*.

*Hugh M. Spall, Jr.*, for appellant.
*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

BROWN, J. — A Yakima County jury found Randall Perkins guilty of possessing methamphetamine. He argues for the first time on appeal that he was denied a fair trial because the prosecutor argued improperly about his criminal record and facts not in evidence. We disagree, and affirm.

## FACTS

On January 31, 1998 at 5:45 A.M., Yakima Police Officer Brian Dahl saw Mr. Perkins near a pickup truck parked with its hood open in a convenience store parking lot. Of-

ficer Dahl became suspicious because he saw activities typical for people involved in the drug trade in an area known for drug activity.

Yakima County Sheriff's Deputy Chad Peterschick joined Officer Dahl. Eventually they observed Mr. Perkins drive away in the truck. Deputy Peterschick stopped Mr. Perkins for a traffic infraction, then arrested him after learning he was driving with a suspended license. The deputy searched the truck's cab incident to the arrest and found hypodermic needles, a sealer, three knives, and five grams of methamphetamine stuffed into a boot. The truck was filled with various car parts and items described later as junk or garbage.

After being advised of his rights and waiving them, Mr. Perkins told the officer he did not know the drugs and drug paraphernalia were in the truck. He claimed to have just picked the truck, fixed it so it would drive, and was in the process of checking it to see if it was operational. Mr. Perkins explained that the truck belonged to someone else and had been left unattended for months.

Mr. Perkins was charged with possessing methamphetamine. At trial, the State produced evidence, without objection, that Mr. Perkins' "driver's status was suspended in the third degree and he had six fails to appear in his driver's record." The State also produced evidence of the significance of the drug paraphernalia found in the truck's cab.

Mr. Perkins testified consistently with his statement given at the scene but added other contradictory detail when presenting his unwitting possession defense. Mr. Perkins' counsel asked him on direct: "Do you have a criminal record?" Mr. Perkins answered: "Yes, I do. I have been in trouble up until some years back, and I have even been to an institution. But I have learned. I have paid my dues and I'm trying now." During the State's cross-examination, Mr. Perkins replied "Yes" to the question: "Now, Mr. Becker asked you about your criminal history; is that right?" The State continued: "Okay. And you said you did have a crim-

inal record; is that right?" Again, Mr. Perkins agreed. Then the State presented evidence of convictions for theft in 1989 and taking a motor vehicle in 1993. Mr. Perkins tried to minimize these convictions by attempting to explain them. The State then moved on to other subjects.

During closing argument, after discussing the doubtful likelihood of leaving the contraband unattended in the truck, the State argued without objection:

> Finally, you have got the boot. Well, the boot is located. There's no reason to believe he didn't know the boot was there. But the boot is sitting there and it contains an awful lot of drugs. Five grams worth. This is not a trace amount, what we call residue in the trade. This is five grams worth of methamphetamine. We didn't get into street values so I'll not talk about that, but this is not just a tiny amount you would not be aware of.

The State also argued without objection:

> We know that the defendant has a criminal record. You know that two of those crimes, two felonies involving theft, which are crimes involving dishonesty which is why we can talk about those offenses, were committed by the defendant. He admits them. This is a guy who steals, and this is a guy who takes vehicles. Says he was convicted for stealing his own. You can believe that if you want. This is not a person to be believed.

The jury found Mr. Perkins guilty as charged. He appealed.

## ANALYSIS

The issue is whether without objection below the trial court erred by entering a judgment of guilt against Mr. Perkins and concluding he received a fair trial when considering the prosecution's (1) argument mentioning Mr. Perkins' criminal record, and (2) argument of facts claimed to be outside the record.

Normally a party may not seek review of an error

raised for the first time on review. RAP 2.5(a). Nevertheless, Mr. Perkins argues he was denied a fair trial, in effect urging us to exercise our discretion to review under RAP 2.5(a)(3). *See State v. Alexander,* 64 Wn. App. 147, 150-51, 822 P.2d 1250 (1992). Some discussion is warranted. The defendant "bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect." *State v. Russell,* 125 Wn.2d 24, 85, 882 P.2d 747 (1994), *cert. denied,* 514 U.S. 1129 (1995). We review the prosecutor's alleged improper argument "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *State v. Brown,* 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied,* 523 U.S. 1007 (1998).

Even if improper, the argument "does not constitute prejudicial error unless the appellate court determines there is a substantial likelihood the misconduct affected the jury's verdict." *State v. Finch,* 137 Wn.2d 792, 839, 975 P.2d 967 (1999), *cert. denied,* 120 S. Ct. 285 (1999). "If the defendant fails to object to an improper remark it is considered waived unless the remark is 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.' " *Id.* (quoting *State v. Stenson,* 132 Wn.2d 668, 719, 940 P.2d 1239 (1997), *cert. denied,* 523 U.S. 1008 (1998)). "Reversal is not required if the error could have been obviated by a curative instruction which the defense did not request." *Brown,* 132 Wn.2d at 561 (quoting *Russell,* 125 Wn.2d at 85).

The premise of Mr. Perkins' claim of improper argument is based upon the foundation that the State by mentioning facts not in the record inappropriately put Mr. Perkins' "criminal record" before the jury. However, the facts show Mr. Perkins placed that specific information before the jury during his direct testimony. "Do you have a criminal record?" Mr. Perkins answered: "Yes, I do. I have been in trouble up until some years back, and I have even been to an institution. But I have learned. I have paid my dues and I'm trying now."

The State, on cross-examination, was free to inquire about matters raised on direct, and did so. "And you said you did have a criminal record; is that right?" Upon Mr. Perkins' agreement to this question, the State simply impeached Mr. Perkins by pointing out the two most recent crimes of dishonesty curried from among the six found in his criminal history. It is worth mentioning that all six would have been automatically admissible under ER 609(a)(2). *See State v. Jones*, 101 Wn.2d 113, 117-18, 677 P.2d 131 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 157, 761 P.2d 588 (1988). The State showed restraint under the circumstances. Overall 11 crimes are shown in Mr. Perkins' criminal history. None except the two most recent crimes of dishonesty were placed before the jury by the prosecution.

Further, the State had informed the jury, without objection, in its case in chief that Mr. Perkins' arrest stemmed from driving with his license suspended and had several appearance problems in his past. From this the jury was aware that Mr. Perkins had other criminal problems in the past.

Mr. Perkins, by injecting his criminal record before the jury as part of his trial strategy, cannot rightfully argue the State erred by arguing the inferences of Mr. Perkins' evidence to the jury. To do so would allow Mr. Perkins to misrepresent his record with impunity, an unfairness to be avoided. *See Jones*, 101 Wn.2d at 121 (a defendant should be warned that misrepresenting his or her background leads to the admission of convictions normally barred under ER 609(a)(1)).

Mr. Perkins argues that *State v. Stith*, 71 Wn. App. 14, 856 P.2d 415 (1993) supports dismissal. It does not. In *Stith*, a drug delivery prosecution, the prosecutor stated to the jury during closing argument: "[The defendant] was out of jail for a week and he basically was just resuming his criminal ways. He was just coming back and he was dealing again." *Id*. at 16. Division One held this comment was "flagrantly improper" because it indicated to the jury that

the prior crime for which the defendant was convicted was drug related, a fact not previously in evidence, and because it was impermissible opinion testimony. *Id.* at 22. In an analysis under ER 609(a)(1), one of the critical factors when weighing the admissibility is the similarity of the prior conviction. *See State v. Saunders*, 91 Wn. App. 575, 580, 958 P.2d 364 (1998) (the more similar the prior crime to the one presently charged, the greater the prejudice).

Mr. Perkins' case is distinguishable because first, the prosecutor was automatically permitted to mention the crimes of dishonesty under ER 609(a)(2), and second, the crimes mentioned were not similar to that charged here. Moreover, the prosecutor did not specifically mention or allude to any other convictions in Mr. Perkins' record. Instead, he carefully used the exact terminology first used by Mr. Perkins' counsel during Mr. Perkins direct examination.

In sum, we cannot say under these circumstances that the prosecutor's argument was so flagrant and ill-intentioned that it would likely evince an enduring and resulting prejudice that could not have been neutralized by a curative instruction. *See Finch*, 137 Wn.2d at 839; *Brown* 132 Wn.2d at 561. We conclude the prosecutor properly argued the criminal record as it had bearing on the credibility issue. It follows that no prosecutorial misconduct occurred when the prosecutor mentioned Mr. Perkins' criminal record. And no prejudice is, thus, possible.

■ Mr. Perkins also contends the prosecutor argued facts not in evidence when he alluded to the street value of the methamphetamine the police found in the truck. A prosecuting attorney has wide latitude during closing argument to draw and express reasonable inferences from the evidence. *State v. Gentry*, 125 Wn.2d 570, 641, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995). However, it is improper for a prosecutor to argue from facts not in evidence. *See State v. Staten*, 60 Wn. App. 163, 173, 802 P.2d 1384 (citing *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988)), *review denied*, 117 Wn.2d 1011 (1991).

Here, the thrust of the prosecutor's argument was that the police found Mr. Perkins with a substantial amount of methamphetamine, an amount unlikely to be left unattended. An inference from this evidence is that it would be unlikely that another person would leave a valuable quantity of drugs unattended in an abandoned truck belonging to someone else. This inference bears on Mr. Perkins' unwitting possession defense and was permissible. Furthermore, any prejudice was minimized because the trial court instructed the jury that arguments of counsel are not evidence and that the jury should disregard such remarks if the evidence does not support them. *See State v. Rice*, 120 Wn.2d 549, 573, 844 P.2d 416 (1993). Thus, we conclude Mr. Perkins has not shown the argument was improper or, even if improper, so flagrant or ill-intentioned that the trial court could not have corrected it with a curative instruction.

Although not an assignment of error, Mr. Perkins contends alternatively that he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's comments and request curative instructions. In light of our conclusions that the State did not err in its arguments, we need not consider this alternative argument.

## CONCLUSION

We hold Mr. Perkins was not denied a fair trial. The prosecutor's argument mentioning his criminal record was proper as it had bearing on credibility, an issue before the jury. Further, the prosecutor did not argue new facts by inferring from the evidence that it would be unlikely for a stranger to abandon a valuable quantity of drugs in the truck driven by Mr. Perkins.

Affirmed.

KURTZ, J., concurs.

SCHULTHEIS, C.J. (dissenting) — The majority opinion

fairly and accurately sets forth the facts material to the case. However, I disagree with its application of the law and, therefore, must respectfully dissent.

As noted in the majority opinion, Randall Perkins did not object to the prosecutor's closing argument of which he now complains. However, both parties admit the remark was improper. When there is no objection to an improper remark, it is considered waived unless the remark is " 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.' " *State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967 (1999) (quoting *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998)), *cert. denied*, 120 S. Ct. 285 (1999).

In its closing the State commented:

> We know that the defendant has a criminal record. You know that two of those crimes, two felonies involving theft, which are crimes involving dishonesty which is why we can talk about those offenses, were committed by the defendant. He admits them. This is a guy who steals, and this is a guy who takes vehicles. Says he was convicted for stealing his own. You can believe that if you want. This is not a person to be believed.

It is possible this remark merely informed the jury that Mr. Perkins had prior convictions that were not explained to them at trial. It is also possible, and indeed probable, that the jury inferred that Mr. Perkins' criminal history also included at least one prior drug conviction. Either way, the remark appears to be intentionally used to mislead the jury into speculating as to the nature of the crimes not mentioned. This tactic introduced facts to the jury that were not in evidence, which prejudiced Mr. Perkins' case to the extent that no curative instruction could have neutralized the damage. Mr. Perkins does not have any type of drug conviction in his record; therefore, the prosecutor's statement is wholly improper. Given the facts of this case, I do not agree with the majority's determination that Mr. Per-

kins received a fair trial. Accordingly, I would reverse and remand for a new trial.

Review denied at 140 Wn.2d 1006 (2000).