IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80606-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID ROBERT STEVENS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — David Stevens was convicted of one count of unlawful possession of a firearm in the second degree following a jury trial. During trial, the only witness called by the State testified that Stevens had "felony convictions." This statement violated a motion in limine related to Stevens' stipulation that a single prior disqualifying conviction would be presented to the jury. Following the witness' statement, Stevens moved for mistrial, but the motion was denied. Stevens appeals the denial of his motion and the court's imposition of a DNA[1] collection fee at sentencing. We find no abuse of discretion as to the mistrial motion and affirm his conviction, but remand for correction of the judgment and sentence order to remove the discretionary fee.

---

[1] Deoxyribonucleic acid.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

David Stevens was charged with one count of unlawful possession of a firearm in the second degree. The charge arose from events that occurred in October 2017. In August 2019, Stevens proceeded to trial. Stevens had agreed to submit a stipulation to the jury as to the fact of a prior felony conviction; an essential element that the State was required to prove.

At trial, the State's only witness was Washington State Department of Fish and Wildlife Officer Nicholas Jorg. Jorg testified he was patrolling private land near Index, Washington when he heard what sounded like gun shots. He continued toward the sound and as he drove around the corner, he came into contact with Jodi Ziebarth, who was standing in the road with two dogs. Jorg testified that, at the point he saw Ziebarth, he heard another series of gun shots. He also indicated that he saw Stevens about 20 yards away, walking toward him with a handgun. Jorg asked Stevens to put the gun on the ground and Stevens complied.

Jorg recalled that Stevens explained that they were target shooting and showed him the pumpkins they had setup as targets. Jorg stated at trial that Stevens had commented that he did not think he had hit any of the pumpkins. Jorg asked Stevens and Ziebarth if they had a permit to be on the private property and they admitted they did not. At Jorg's request, they both provided identification. Jorg testified that at some point during their interaction, Stevens informed him that he was a felon and not supposed to possess guns or ammunition.

On direct examination, the prosecutor asked Jorg about running background checks on both Stevens and Ziebarth. When the prosecutor asked

whether the checks confirmed anything for Jorg with regard to Stevens, he replied, "Yes, definitely so." The prosecutor next asked Jorg what was confirmed and Jorg replied, "He was confirmed to have felony convictions." Defense counsel objected and argument was taken up outside the presence of the jury. Stevens moved for a mistrial, arguing Jorg's use of the plural "convictions" informed the jury that Stevens had multiple disqualifying convictions despite the pretrial stipulation to the disclosure to the jury of a single felony.

The trial court denied the mistrial motion. The judge admitted the testimony was prejudicial, but concluded it was not "unduly" so and that any prejudice which existed could be cured by modifying the stipulation to include an additional instruction: "You are to disregard evidence inconsistent with that stipulation."

Jorg's testimony resumed and he explained that the couple also had three boxes of ammunition with them and that Jorg found ammunition in Stevens' front pocket. During the encounter, Ziebarth explained to Jorg that the gun and ammunition belonged to her. Jorg seized the weapon and ammunition and ordered Stevens and Ziebarth off the private property. He indicated that they complied. At the close of Jorg's testimony, the trial court read the stipulation, including the additional curative instruction, to the jury. The State then rested its case.

The defense called Ziebarth, who testified Stevens never possessed the gun and explained she had purchased it for self-defense. Ziebarth explained they went out to the land where Jorg encountered them because she thought it would be a safe place to learn how to use her handgun. She recalled that there were

other people shooting in the area, but that they left shortly after she and Stevens arrived. Ziebarth indicated she had been in possession of the firearm and Stevens set up targets and stayed with the dogs while Ziebarth practiced. Ziebarth indicated Jorg arrived while Stevens was handling the targets. Ziebarth testified Stevens held a box of empty ammunition as Jorg approached, but denied that Stevens possessed the gun.

At the close of trial, the jury found Stevens guilty as charged. Stevens was sentenced to three months of incarceration. The court ordered Stevens to pay a $100 DNA collection fee. Stevens now appeals.

ANALYSIS

I. Denial of Motion for Mistrial

Stevens challenges the trial court's denial of his motion for a mistrial. The motion for mistrial was based on Jorg's testimony during which he stated that Stevens' background check indicated that he had "felony convictions." This testimony indicated multiple as opposed to a single conviction. Stevens argued that Jorg's testimony regarding multiple convictions prejudiced him by raising the risk "that the jury's verdict would be improperly based on a propensity for him to commit crimes in general." While the trial court recognized the irregularity as prejudicial, it ultimately ruled the irregularity did not rise to the standard of being unduly prejudicial such that it warranted granting the motion for a mistrial and that a curative instruction was sufficient.

We review a trial court's denial for a motion for mistrial for an abuse of discretion. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). "A trial

court 'abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable.'" State v. Arndt, 5 Wn. App. 2d 341, 347, 426 P.3d 804 (2018) (quoting State v. Gaines, 194 Wn. App. 892, 896, 380 P.3d 540 (2016)). A trial court has wide discretion to cure trial irregularities resulting from improper witness statements. State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). "[T]he court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). "The trial judge is best suited to judge the prejudice of a statement." Id. Prejudice from error is considered against the backdrop of the trial as a whole. State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987).

In reviewing a trial court's ruling on a motion for a mistrial, we utilize a three-part test to determine whether the defendant was so prejudiced as to require a new trial. State v. Weber, 99 Wn.2d 158, 165–66, 659 P.2d 1102 (1983). We consider 1) the seriousness of the irregularity, 2) whether the statement at issue was cumulative of other properly admitted evidence, and 3) whether the irregularity was able to be cured by an instruction to disregard the improper testimony, which the jury is presumed to follow. Id.

As to the first factor, the seriousness of the irregularity, Jorg's single reference that "dispatch" confirmed the defendant had "felony convictions," though prejudicial, was not serious in that Stevens had in fact been convicted of a felony that rendered him ineligible to lawfully possess a firearm and he expressly agreed that the jury would be advised of that fact pursuant to his stipulation. Our state has

- 5 -

long recognized that evidence of prior criminal convictions is prejudicial. See State v. Hardy, 133 Wn.2d 701, 706–12, 946 P.2d 1175 (1997); State v. Alexis, 95 Wn.2d 15, 17–20, 621 P.2d 1269 (1980); State v. Gomez, 75 Wn. App. 648, 652–57, 880 P.2d 65 (1994). Here, though, the testimony by Jorg provided no indication as to the nature of the convictions; not the crime nor the underlying facts. Additionally, we find it informative that Stevens had already gone through the colloquy with the court when he entered the stipulation to a conviction, such that he was fully aware that some aspect of his criminal history was going to be disclosed. We also must acknowledge that the dispute here is not that the jury was informed that Stevens had any criminal history at all, but instead just how extensive it might be. The single, relatively sanitized reference to "felony convictions," as opposed to the singular noun, was not particularly serious in the context of a trial on the charge of unlawful possession of a firearm wherein proof of a prior disqualifying felony conviction is an essential element.

State v. Condon is instructive on this issue. 72 Wn. App. 638, 865 P.2d 521 (1993). Condon dealt with two statements by a witness that referenced the defendant having been in jail. Id. at 648. The trial court had previously ruled to exclude any references regarding Condon's time in jail. Id. However on review, our court determined the statements were not serious enough to warrant a mistrial and that the court's instruction to disregard the statements were sufficient to "alleviate any prejudice that may have resulted." Id. at 650.

Here, we have a similarly ambiguous statement regarding Stevens having "felony convictions" with no indication of what the crimes of conviction were or the

underlying facts regarding the criminal conduct. Additionally, Stevens was on trial for unlawfully possessing a firearm after losing that right pursuant to a felony conviction. Testimony regarding that disqualifying conviction was expected to be adduced at trial in some form, which distinguishes this case from a situation where criminal history may be otherwise inadmissible. As such, this was not a serious irregularity.

Regarding the second factor, whether the statement at issue was cumulative of other properly admitted evidence, we find the evidence was generally cumulative in that the jury was provided a stipulation that Stevens had been convicted of a felony. Stevens argues this evidence was not cumulative in that it referenced multiple convictions instead of the single conviction addressed in the stipulation. Due to the general nature of this statement in that no specific number of convictions were given, no particular types of crimes, and no underlying facts were provided, we find this argument unpersuasive. The evidence indicated Stevens had been convicted as a felon. Jorg's testimony did not go beyond this. Further, the defense witness provided statements which indicated that Stevens had a criminal record which included a felony. Overall, this factor weighs toward the cumulative nature of the challenged evidence.

The final factor, whether the irregularity was able to be cured by an instruction to disregard the improper testimony, weighs in favor of a conclusion that it was curable. As discussed above, the statement at issue was fairly sterile in that it indicated Stevens had more than one conviction in the context of a trial where

he had entered a stipulation to having a felony conviction. The trial court provided a curative instruction with the stipulation at the close of Jorg's testimony. It stated:

> Members of the jury the parties have agreed that certain facts are true. You are to disregard any evidence that is inconstant with this stipulation. You must as true that the person before the Court who has been identified in charging—in the charging document as Defendant David Robert Stevens was convicted on October 27, 2008, of a felony offense in [State of Washington vs. David Robert Stevens], Cause [No.] 08-1-05731 SEA. The stipulation is to be considered evidence only of the prior conviction element. You are not to speculate as to the nature of the prior conviction. You must not consider the stipulation for any other purpose.

This instruction walked the very fine line between calling undue attention to Jorg's statement and instructing the jurors to disregard such information. It is noteworthy, that defense did not propose a curative instruction, which could be considered a tactical decision as doing so might have drawn more attention to the statement. See State v. Kloepper, 179 Wn. App. 343, 355–56, 317 P.3d 1088 (2014). Further, jurors are presumed to follow the instruction given by the court. State v. Hicks, 75 Wn.2d 73, 78, 448 P.2d 930 (1968). Here, the curative language added to the stipulation was sufficient such to cure any potential prejudice from Jorg's statement.

The factors weigh against a determination that the trial court abused its discretion in denying Stevens' motion for a mistrial. The statement was made in isolation, the evidence was generally cumulative in that the jury was informed that Stevens had been convicted of one disqualifying felony, and the court provided a sufficient curative instruction in a form that did not further emphasize the testimony. Finding the trial court did not abuse its discretion, we affirm Stevens' conviction.

II.   Imposition of DNA Collection Fee

Stevens' final challenge on appeal is that the $100 DNA collection fee imposed as a part of his judgment and sentence should be stricken. We agree. The State first argues that this issue is waived by the defense and that we should decline to review it. The State then contends that the fee was properly imposed based on the information available to the court at the time of sentencing. We disagree with the State's reasoning on this matter and further question the efficacy of the State's opposition to assignments of error based on the imposition of non-mandatory fees for those the court finds to be indigent. We will review this challenge.

Our court recently reiterated in State v. Anderson that it is improper to collect a DNA fee from an indigent individual. 9 Wn. App. 2d 430, 461, 447 P.3d 176 (2019); see also State v. Maling, 6 Wn. App. 2d 838, 844–45, 431 P.3d 499 (2018). Further, Anderson expressly held that courts should not order the fee in cases where the defendant has prior felonies which would require a DNA collection under RCW 43.43.754(1)(a). 9 Wn. App. 2d at 461. Here, as in Anderson, Stevens has at least one prior felony conviction for which a DNA sample was statutorily required to be collected and further, the record reflects that the court found Stevens was indigent at the time of sentencing.

At oral argument on sentencing, the State averred that Stevens did not have a DNA sample on file and the statement of defendant's criminal history prepared by the State and filed with the court similarly reflected that assertion. However, that same statement of criminal history demonstrates that Stevens had two

separate convictions for class C felonies in 2008,[2] either of which would have required the collection of a DNA sample under state law. Based on this information, which was available to the trial court at the time of sentencing, and the court's finding that Stevens was indigent, we conclude that the imposition of a new DNA collection fee was in error. As such, we remand for the court to strike the DNA collection fee from Stevens' judgment and sentence.

Affirmed in part and remanded for correction of the judgment and sentence.

WE CONCUR:

_Mann, C.J._

---

[2] It appears that the deputy prosecutor at the trial court mistakenly categorized a 2008 conviction for attempted possession of a controlled substance as an adult misdemeanor. That offense is an unranked class C felony. RCW 69.50.4013(2) and 69.50.407; see also State v. Wojtyna, 70 Wn. App. 689, 697, 855 P.2d 315 (1993) (citing State v. Mendoza, 63 Wn. App. 373, 819 P.2d 387 (1991)).

However, our Supreme Court's recent opinion in State v. Blake, No. 96873-0, slip op. (Wash. Feb. 25, 2021), http://www.courts.wa.gov/opinions/pdf/968730.pdf, renders Stevens' conviction for attempted possession of a controlled substance void and would not change the court's original calculation of his offender score as a one.